BARNABAS STROUT *versus* MILLBRIDGE COMPANY.

At common law, the mill owner was not authorized to build and maintain his dam, in such a manner as to flow the land of proprietors above his mill, on the same stream. And a continuance of his dam, to their injury, would be deemed a nuisance.

The owners of a dam erected across a *navigable* river, which caused the land above to be flowed, are not liable to a complaint for flowage, by the owner of such land, under the provisions of c. 126 of the R. S. of 1841.

COMPLAINT FOR FLOWAGE, under c. 126, of R. S. of 1841. The case comes before the Court on REPORT of the evidence by APPLETON, J., by which it appears that plaintiff introduc-

ed, without objection, deeds showing title in him to the land flowed, as set forth in the complaint. Also, several depositions, tending to show the extent to which his lands have been flowed, and the damage he has sustained thereby.

Wm. Freeman, called by plaintiff, testified that he was one of the defendant corporation; that the corporation commenced the dam, by which the plaintiff's land was flowed, and partly finished the same; that the name of the company was changed to the Millbridge Company; that the flowing of the plaintiff's land is caused by defendants' dam; that there is no other dam; that defendants' dam is two miles below the marsh; that mills have been built on the dam; that the dam constitutes a bridge and was completed in 1849; that the dam was built in tide waters, and that the mills are tide mills.

Another witness testified, that the dam keeps the water from flowing out; that, when there is a freshet in the river, the dam causes more land to be flowed, than was flowed before its erection. On cross-examination, witness stated, that the dam retards the falling of the tide; that the tide flows some miles above the dam; that the width of the river, at the "Narrows," where the dam is built, is 15 rods, at high water; the river is wider above the dam; it opens, from the Narrows, into Narraguagus bay. Vessels load at the Narrows, and the ebb and flow of the tide, at that place, is twelve feet. A steamboat could have passed through the Narrows before the dam was built.

The Act, incorporating the defendant corporation, was introduced, c. 151, of Special Laws of 1836, p. 137. Also, Act amendatory, c. 107, Special Laws of 1848, p. 148.

The Court to judge of the sufficiency of the complaint, and to enter up such judgment, by nonsuit or default, as the legal rights of the parties may require. If, on default, damages to be assessed by commissioners duly appointed.

*G. F. Talbot,* for the complainant.

It is not necessary, under the present statute, to aver, that the dam complained of was erected by defendants *on their*

*own land, or on land of another person, with his consent.* The case of *Farrington* v. *Blish,* 14 Maine, 423, was a decision on the statute of 1821, containing essentially different provisions than are contained in the statute under which this complaint is instituted. The averments of facts required, are contained in § 5, of c. 126, of R. S. of 1841 :—"Any person sustaining damages in his lands, by their being overflowed by a mill-dam, may obtain compensation for the injury, by complaint to the District Court, in the county where the lands shall be situated, but no compensation shall be awarded for any damages sustained more than three years before the instituting of the complaint."

The remedy given is general,—to any person whose lands have been, or shall be, overflowed by a mill-dam. There is no restriction to any class of mills or dams, and no reference whatever to the ownership of the site of the mill or dam; nor is there, as in the second section of the Act of 1821, any word or phrase referring to, or adopting, any special description or limitation recited in a previous section. The statute having been essentially changed, the case of *Farrington* v. *Blish* becomes irrelevant.

Not only does the statute not require any averment that the dam complained of was built upon the respondent's own land, or land upon which he had a right to build, but there can be no reason conceived of why such fact, however it might be, could be of any importance, save that, if the dam had been erected unlawfully, upon land of the complainant, he might proceed against its builders as ordinary trespassers, or proceed to cut it away without any resort to suit. But, in this case, the dam appears to have been rightfully erected by an incorporated company, and by virtue of a charter from the Legislature.

The complaint is sufficient without any averment that the stream, across which the dam is erected, is not a navigable stream. Such an averment would be inconsistent with the fact, the stream being tide waters, somewhat obstructed by falls and rapids, but undoubtedly *navigable.* In other words,

then, the complainant claims that the remedies prescribed in chapter 126, of the R. S., do apply to *navigable* streams.

The statute regulating mills and flowage has always been in operation in this State, and similar provisions have existed in Massachusetts, since the time of the Revolution. These statutes are to encourage the use of water power and machinery. The remedies they prescribe, for the invasion of the enjoyment of owners of lands necessarily flowed, are remedies which are less onerous upon mill owners than those under the common law, and the statutes themselves suspend the common law remedies, and restrict the injured party to those they provide. In several respects, the flowage process favors the owners of mills. Only the absolute damages may be recovered of them. They are permitted to use the lands of private owners, during such season of the year as commissioners shall decide to be of no injury to the lands. They are saved from a multiplicity of suits, and the yearly damage, once equitably fixed, becomes the measure of future damages. Under these provisions, the milling and manufacturing interests in this State have greatly flourished. There seems to be no reason why this general Act, provided for the regulation of mills and dams, should apply only to mills and dams of a certain class. A mill-dam to work a tide mill at the mouth of a navigable tide creek, the margins of which are lined with extensive dyke marshes, like the Pleasant river, the Great Marsh stream, and other streams in this county, would be used for the same purposes as a mill-dam standing upon fresh water falls, and flowing extensive fresh intervals above. In both cases, the head of water drowns the meadows and destroys the hay of the proprietors of the meadows. Why should not the liabilities of one party, and the remedies of the other, be the same in both cases ?

If mill-dams built upon navigable streams are exempt from the operation of the statute process of complaint for flowage, it must be either that they are expressly so exempted by the terms of the statute, or else upon the general principle that mill-dams, so built, are not rightfully there, and may be abated

as public nuisances. I proceed to examine the question in reference to each of these reasons. And —

1st. There is no express exemption of mill-dams across navigable streams, in the language of the Act. Section 5, in which the remedy is given, provides, that "any person sustaining damages in his lands, by their being overflowed by a mill-dam, may obtain compensation for the injury by application to the District Court," &c. Nothing could be more general. It is only made necessary that the lands shall be injured, and injured by a mill-dam. Neither is there, in this section, any adoption of, or reference to any limitary descriptions in the first section, or any phrase, like "as aforesaid" in the old law, to indicate that the complaint is confined to the kind of mill-dams previously mentioned. The first section gives the right to erect water mills and dams, so that the persons erecting them, provided that they do not injure any other mill-dam or mill site, shall not be liable as trespassers for the flowage which they necessarily cause. The insertion of the description navigable is to save public rights, the rights of the public to use the river as a way, and for the purpose of preventing an Act, intended to operate specially for the encouragement of water machinery, operating, by a mere inadvertence of phraseology, as a grant, also, of certain important easements of the public. Indeed, I respectfully submit that all the first section, containing the grant of a right to erect mill-dams, the limitations, navigability, not to injure dam or site of another mill, not to be built without title in the land, are necessary restrictions of that grant, and that the whole force of these phrases is exhausted in that restriction, and that they have no reference whatever to the fifth section.

2d. A mill-dam upon a navigable stream, as in this case, cannot be exempt from the statute process, of complaint for flowage, by reason of its being an obstruction and a nuisance, for if the dam, being across a navigable stream, be a nuisance, it is only so as it relates to the public right to use the waters of the river for the purpose of navigation. But, of these public rights, the Legislature is the sovereign and guardian.

Strout *v.* Millbridge Company.

" The Legislature have the right to impede or obstruct the navigation of navigable waters of the State, if the public good requires it." *Parker* v. *Cutler Mill-dam Co.*, 20 Maine, 353. They have exercised such power in the Act of incorporation of the defendant company, and in authorizing them, by such Act, to build and maintain this dam. The rights which the Legislature only could grant, were the public rights to the navigation of the river, and the use of the stream, as a highway. These rights have been granted to the Millbridge Company, or, to speak more strictly, a more perfect navigability of the river has been secured to the public, while certain privileges have been secured to the corporators. The public are completely estopped to make any complaint, affecting the navigation, and the Act of the Legislature places the river in the precise situation, so far as private rights are concerned, that a private or unnavigable stream would be in. *Clark* v. *Mayor & als. of Syracuse*, 13 Barb. 32, cited in United States Annual Digest, 1853, page 481.

While the Act of the Legislature gives the respondent company the same rights, as against the public, which an individual proprietor would have on a private or unnavigable stream, it left them under precisely the same liabilities, as to the interests of private owners of lands upon which they might intrude. The Legislature did not intend to give the company the absolute right to flow the lands of riparian proprietors, but the right to flow them, subject to the general provisions of the statute on that subject. Even if the Legislature had so intended, and had so enacted, the Act would be void for unconstitutionality, for private property cannot be taken, even for public uses, without compensation. The public easement, the Legislature could grant, the private title to lands they could not grant, without leaving a means of recompense to the owners. This recompense is provided in the flowage Act.

If the non-navigability of the stream, upon which a mill-dam is built, is essential to lay the foundation of a complaint, then the process of complaint for flowage is not applicable to

any of the rivers or streams of Maine, whereupon any mill-dam now is, or is ever likely to be built. For all the streams in which water runs have been declared to be navigable streams, in the case of *Brown* v. *Chadbourne,* and to leave the remedy to such streams as were not supplied with water would restrict it to such streams as were not liable to flowage at all. All the rivers upon which mill-dams are built, and logs floated, are navigable streams. The Court will not, certainly, require a condition which shall effectually make void the beneficial provisions of the statute.

But the Court may not be inclined to consider the reasoning, while entertaining the impression that the points herein discussed have already been settled adversely to this reasoning. I undertake to say that the Court have not so settled the law.

There is a marginal note in *Parker* v. *Cutler Mill-dam Co.,* 20 Maine, 353, to this effect. "*The corporation, while acting within the powers granted, is not liable for any injury suffered by an individual, by altering the flux and reflux of the tide.*" I have carefully examined this case, and find no such principle asserted, but rather that a doctrine precisely the reverse of this is distinctly intimated. The reporter has failed to notice a limitation in the language of the Court, which quite changes the proposition. Judge SHEPLEY, in the opinion, says:— "The jury have found that the dam was erected across Little River harbor. The corporation is not, therefore, liable for any injury which the plaintiff may have suffered, *by obstructions to the navigation,* by altering the flux and reflux of the tide." In order correctly to have indicated the point decided, the note should have read, *the corporation, while acting within the powers granted, is not liable for any injury suffered by any individual, in the nature of obstructions to the navigation, by altering the flux and reflux of the tide.*

A full examination of the case shows that this was the precise point decided. Parker sought damages for injuries by the defendant, to his *fishing* and *water privileges,* — he claimed that he was obstructed in his right to pass and repass from his

land to the sea.   He proved, only, that some damage was occasioned by raising the water higher upon the beach, but no part of his land was flowed.   The Court seem carefully to have inquired whether he was injured *in his lands*, in his private and exclusive rights, and refused to award damages, solely on the ground that he had shown himself injured, as one of the public, in the navigation of the water, and in the shore fishery, and that he had never acquired an exclusive right to any easements of that character; and the public rights of that character, his own among them, having been granted by the Legislature to the defendants, they were not in fault.

In the case of *Bryant* v. *Glidden*, 36 Maine, 36, the Court say, indeed, that it is required to allege, in a complaint for flowage, that the stream, upon which the dam complained of stands, is not a navigable stream.   But they say so, first, in deciding a case wherein it appears that the dam was built upon a navigable stream, and without any charter or Act of the Legislature, authorizing the building; and, in the next place, they say so expressly on the ground that, if the stream is navigable, the dam is a nuisance, and to entertain such a complaint is to put the State to the expense of regulating a public nuisance.   In this case, such presumption is impossible. The respondents had a charter of the Legislature, to build their dam; the Court, therefore, cannot turn over an injured party to his right to abate a nuisance, by his own hand, or by criminal prosecution.   His remedy must be a civil remedy; why shall it not be, (as the one least oppressive to the respondents,) the statute remedy?   If he is shut off from that, the Court must offer some reason for the exclusion, other than those wholly inapplicable reasons in *Bryant* v. *Glidden.*

I conceive that, had the authority of the respondent to build the dam appeared, the ruling upon that point would have been different, the Court adopting the idea that a public grant places the mill-dam owner in the same position toward riparian proprietors in which the owners of private streams stand. The Court, indeed, say "the whole proceeding," (*i. e.* complaint for flowage,) "has reference to dams authorized by

statute, and not to dams not authorized by statute." The dam in this case, though not authorized by the general statute, is yet authorized by the statute of incorporation.

But, if the respondents in defence say, if you are right in claiming that the public grant places us in the liability to riparian proprietors, as the occupants of non-navigable streams, then you should have set forth that special character of the stream, in your complaint, it is replied, we have substantially set it forth in these words:— "A mill-dam, erected on and across said Narraguagus river, at a place called the Narrows, below Salt Water Falls, in Millbridge, in said county, maintained, kept up and occupied by a corporation, called the Millbridge Company, created by a law of this State, for the purpose of raising a head of water to set in motion and operate mills." Here the corporate character of the act of erecting and maintaining is asserted, an assertion, as I have endeavored to show, tantamount to that of the non-navigability of the stream, if such had been its condition. At any rate, the power of the company to maintain the dam, so far as to preclude the Court from entertaining the idea of its being a nuisance, is fully in the case as a fact, and the complaint, not having been demurred to, or dismissed for defect in matter of form, and the facts being agreed upon, it is too late to take advantage of such defect, if it exist.

It would be a great hardship upon a citizen, owner of lands overflowed by a mill-dam, if, having a plain and unrestricted remedy before him, in § 5, of c. 126, of the R. S., which he is obliged to pursue or be mulct in costs, (for § 25 of the same chapter prohibits all other suits than those by complaint,) he finds that there are limitations and conditions which deprive him of its benefits. He brings his complaint, and the respondent effectually defends by pleading *navigable stream,* — you ought to have brought your action on the case. He brings his action on the case, and the respondent answers, I have a charter to maintain the dam, and, if your lands are overflowed, you must pursue the statute remedy.

The case of *Coggeswell* v. *Essex Man'g Co.*, 6 Pick. 94, is

a decision upon a Massachusetts statute similar to our statute of 1821.

*B. Bradbury,* for defendants.

This is a complaint for flowage, under c. 126, of R. S. of 1841.

Chief Justice WESTON, in *Farrington* v. *Blish,* 14 Maine, 425, says, "it is a process specially given, which should contain averments.of all the facts made essential by the statute, to enable the complainant to avail himself of the remedy prescribed."

In that case it was held to be necessary to aver, in the complaint, that the dam complained of was erected by the respondent on his own land, or the land of another with his consent.

The counsel for the complainant endeavors to avert the effect of this decision, by alleging that a change in the statute, under which that decision was made, renders such an averment unnecessary.

Among the reasons, showing the propriety of such an averment, is this:—the same statute, (§ 19,) gives a lien upon the mill, mill-dam and appurtenances, for the accruing damages, and provides, (§ 21,) that the same may be sold upon execution; a penalty which it surely would not impose upon a citizen who had *not* erected, nor permitted to be erected, dams and mills upon his land.

While it is conceded that the Revised Statutes have altered the arrangement and phraseology of the former law, it is respectfully submitted that the meaning is not essentially changed. Taking the 1st and 3d sections of the 126th chapter of the Revised Statutes together, they convey the substantive idea upon which the decision of the Court, in the case of *Farrington* v. *Blish,* was based. It is still necessary to aver that the respondent had erected a water mill upon his own land, or (changing the language of the former law, to that now used,) on the land of another person, by the grant, conveyance or authority of the owner. Neither of these alle-

gations is to be found in this complaint. It is, therefore, insufficient; and the sufficiency of the complaint is specifically submitted to the Court by the terms of the report.

Further, the evidence in the case shows, and the learned counsel for the complainant admits in his argument, that the Narraguagus river, (across which the dam complained of is built,) is a *navigable river.*

In the case of *Bryant* v. *Glidden,* 36 Maine, 36, it is decided that it is necessary to aver, in a complaint for flowage, that the river, across which the dam is built, is *not navigable.* This complaint, containing no such averment, is insufficient.

But the counsel for the complainant insists that mill-dams across navigable rivers are not exempted from liability under the flowage Act, because, he says, that the language of the 5th section of the Act is general and unlimited, and includes any and all mill-dams wherever constructed.

This precise argument is answered by Chief Justice SHEPLEY, in the case of *Glidden* v. *Bryant,* before referred to, page 43. The first section of the Act, in terms, refers to all the subsequent provisions, as relating and referring back to itself. The 5th section cannot be broader than the 1st; and the 1st section *expressly* limits the right to erect and maintain a water mill to streams *not navigable.*

It is manifest that the Legislature never intended to surrender its power over tide waters and navigable rivers.

The subsequent action of the law-making power, in granting charters for the construction of dams, &c., over tide waters, shows that they have retained all the rights of a sovereign, in such cases. In fact, the Legislature has granted a portion of its powers over the river Narraguagus to the defendant corporation. The Millbridge Company has no other rights at the Salt Water Falls, than such as are derived from the State. They are subject to the control of the Legislature. For the manner in which they exercise their chartered rights, they are liable to the Legislature, on the one hand, and, under the law of the land, to persons damnified by their acts, on the other, but not under the flowage Act, which expressly excludes this class

of rivers from the operation of its provisions. But it would seem hardly necessary to consider the reasons which may have induced the Legislature to make this exception, so long as it is made in express, direct and unmistakable language.

If this view of the statute be correct, it becomes unnecessary to consider the suggestion of the counsel of the complainant, that a mill-dam upon a navigable stream cannot be exempt from the statute process of flowage, by reason of its being an obstruction and a nuisance.

Indeed, it is difficult to perceive how such a position can affect the construction of the statute, any further than that it might be one reason why the Legislature should be unwilling to extend the flowage Act to navigable streams.

It is quite unnecessary, also, to consider how far the case of *Brown* v. *Chadbourne,* (referred to by the complainant's counsel,) may extend or limit the application of the flowage statute to the rivers of the State, inasmuch as it is admitted that the Narraguagus river is a navigable stream.

The charter, granted by the Legislature to the defendant corporation, prescribes its rights, powers and duties. But it does not declare that the Narraguagus river is not navigable. Nor does it, in any way, subject the corporation to any liability under the flowage Act.

As a corporation, it is subject to the authority of the Legislature, and it is also liable to persons, complaining of any wrongful acts, under the laws of the land.

The opinion of the Court was drawn up by

RICE, J. — This is a complaint for flowage, instituted under the Mill Act, c. 126, R. S. of 1841, and comes up on Report.

At common law, the mill-owner was not authorized to erect and maintain his dam, in such a manner as to flow the lands of proprietors above his mill, on the same stream. Goubolt, 59 ; Cro. Jac. 556. Such a structure, by which the land of another would be overflowed, would be a nuisance. Com. Dig., Action on Case, A.

But, by section first, c. 126, R. S. of 1841, it is provided

that any man may erect and maintain a water-mill, and a dam to raise water for working it, upon and across any stream that is not navigable, upon the terms and conditions, and subject to the regulations therein expressed.

The evidence reported shows that the dam, by which the flowage complained of has been occasioned, was erected by the defendant corporation across a stream where the tide ebbs and flows, and which is navigable for sea-going vessels. This fact is admitted.

It is, however, contended that the fact that the stream is navigable does not preclude the complainant from recovering his damages for flowage in this form of procedure, under the provision of section five of the statute, above referred to; that section being general in its terms, and applying to all persons who may sustain damages in his lands, by their being overflowed by a mill-dam.

The first section of c. 126 authorises the erection of dams across streams *not navigable*, to raise water for working mills. It was not the intention to authorize, at the pleasure of individuals, the erection of such dams across navigable streams, thereby obstructing their navigation. *Bryant* v. *Glidden*, 36 Maine, 36.

The unlimited language used in the fifth section of that statute must be considered in connection with other provisions of the statute. The whole proceedings have reference to claims authorized by the statute, and not to claims not authorized by it. *Ib.*

The case not falling within the mill Act, the parties are to have their rights determined by the principles of the common law, unless that rule has been changed by the interposition of the Legislature.

The defendants are a corporation, and were originally incorporated under the name of the "Salt Water Falls Company." Chapter 151, Private Laws of 1836.

By this Act, the corporation was authorized to build, maintain, repair and rebuild, a dam and bridge, either separately or connected, as may be thought necessary, across the Nar-

raguagus river, in the town of Harrington, and at a place called Salt Water Falls, and, under certain restrictions, provided in said Act, the company is authorized to flow the water by means of said dam, and to use and improve the same for propelling mills, factories and for other purposes.

By section nine, of the same Act, it is provided, if any person or persons shall suffer damage by the exercise of any of the powers herein granted to said corporation, and the amount of such damage cannot be agreed upon by the parties, or some suitable person or persons, agreed upon to estimate the same, the Court of Common Pleas, for the county of Washington, shall, on application of the party aggrieved, cause said damage to be estimated by three disinterested freeholders of the same county:—*Provided, however,* that if either party be dissatisfied with the award of said committee, such party shall be entitled to trial by jury, in the manner other like cases are determined.

By c. 107, Special Laws of 1848, the Salt Water Falls Company were allowed to take the corporate name of the "Millbridge Company," with all the rights and privileges conferred on said Salt Water Falls Company by Act to incorporate the same.

Whether parties, who have sustained damage in consequence of their lands having been overflowed, by the operation of the works of the defendant corporation, are restricted to the remedies provided in the above Act of incorporation, it is not proper for us to determine at this time. The case, as presented, is not within the provisions of c. 126, R. S., 1841.

According to the agreement of the parties, a nonsuit must be entered.

TENNEY, C. J., HATHAWAY, APPLETON, CUTTING, and GOODENOW, J. J., concurred.